FILED
07-30-2019
John Barrett
Clerk of Circuit Court
2019CV005816
Honorable William S. Pocan-26
Branch 26

## STATE OF WISCONSIN  CIRCUIT COURT  MILWAUKEE COUNTY

**Kevin J. Renken**
2020 N. Lincoln Park West, 29E
Chicago IL 60614,

                Plaintiff,

v.

**Board of Regents of the**
**University of Wisconsin System**
1220 Linden Drive
Madison, WI 33706,

**University of Wisconsin- Milwaukee**
3271 N. Lake Drive
Milwaukee, WI 53211,

**Mark Mone**
Chapman Hall, Room 202
2310 E. Hartford Ave
Milwaukee, WI 53201, and

**John Boyland**
3200 N. Cramer St., EMS 925
Milwaukee, WI 53211,

                Defendants.

Case No.:
Case Code: 30106
Intentional tort

## SUMMONS

THE STATE OF WISCONSIN
To each person named above as a Defendant:

    You are hereby notified that the plaintiff named above has filed a lawsuit or other legal action against you.  The complaint, which is attached, states the nature and basis of the legal action.

    Within forty-five (45) days of receiving this summons, you must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the complaint.  The court may reject or disregard an answer that does not follow the requirements of the statutes.  The answer must be sent or delivered to the court, whose address is:

                Clerk of Circuit Court

Milwaukee County Court House
901 N. 9th Street, Room 104
Milwaukee, WI 53233-1425

and to Ralph J. Ehlinger, plaintiff's attorney, whose address is:

Ralph J. Ehlinger
Ehlinger Law Office, LLC
W175 N11117 Stonewood Drive #212
Germantown, Wisconsin 53022-6506

You may have an attorney help or represent you.

If you do not provide a proper answer within 45 days, the court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated this 30th day of July, 2019.

<u>Electronically signed by Ralph J. Ehlinger</u>
Ralph J. Ehlinger
State Bar No.: 1010432
EHLINGER LAW OFFICE, LLC
W175 N11117 Stonewood Drive #212
Germantown, WI 53022-6506
Telephone: (262) 255-5060
Facsimile: (262) 255-5553
ralph@ehlingeradvocates.com
Attorney for Plaintiff

-2-

FILED
07-30-2019
John Barrett
Clerk of Circuit Court
2019CV005816
Honorable William S. Pocan-26
Branch 26

<u>**STATE OF WISCONSIN   CIRCUIT COURT   MILWAUKEE COUNTY**</u>

**Kevin J. Renken**
2020 N. Lincoln Park West, 29E
Chicago IL 60614,

       Plaintiff,

v.

**Board of Regents of the
University of Wisconsin System**
1220 Linden Drive
Madison, WI 33706,

**University of Wisconsin- Milwaukee**
3271 N. Lake Drive
Milwaukee, WI 53211,

**Mark Mone**
Chapman Hall, Room 202
2310 E. Hartford Ave
Milwaukee, WI 53201, and

**John Boyland**
3200 N. Cramer St. EMS 925
Milwaukee, WI 53211,
       Defendants.

Case No.:
Case Code: 30106
Intentional tort

## COMPLAINT

The plaintiff, by his attorney, Ralph J. Ehlinger, of Ehlinger Law Office, LLC, alleges the following as his complaint against the defendants:

 1. The plaintiff is a tenured Associate Professor of Mechanical Engineering at the University of Wisconsin-Milwaukee ("UWM"). He has been employed there since 1987. He is a resident of the State of Illinois residing at 2020 N. Lincoln Park West, 29E, Chicago IL 60614.

 2. UWM is an institution within the University of Wisconsin System created by the State

-3-

of Wisconsin under Chapter 36 of the Wisconsin Statutes and Article X, Section 6 of the Wisconsin Constitution and as such is a branch of the government of the State of Wisconsin.

3. The Board of Regents of the University of Wisconsin System is the body created by statute to oversee and manage the University of Wisconsin System, including UWM.

4. Mark Mone is the Chancellor of UWM and as such is the executive head of that institution and of its faculty and is responsible, *inter alia*, for "defining and administering institutional standards for faculty peer evaluation and screening candidates for appointment, promotion and tenure, recommending individual merit increases, [and] administering associated auxiliary services." (Wis.Stat. §36.09 (3)).

5. John Boyland is a professor at UWM and at all times referred to herein was the chair of UWM's Faculty Rights and Responsibilities Committee ("FRRC"), with offices at 3200 N. Cramer St., EMS 925, Milwaukee, WI 53211.

6. On February 21, 2019, eight members of the UWM Department of Mechanical Engineering filed a complaint against Professor Renken with the UWM University Committee, "for FRRC Consideration," alleging that he had engaged in "disruptive, abusive, and bullying behavior" and asking that discipline be imposed in accordance with the UWM Policies and Procedures.

7. Professor Renken received a copy of the complaint, 73 pages in all including 66 pages of exhibits, on February 28 with a forwarding memorandum of that date from the chair of the University Committee to the members of the FRRC stating "Enclosed is a copy of a complaint against Associate Professor Kevin Renken….The University Committee is submitting this to your committee for consideration. Thank you for your efforts to expedite this matter in a timely

fashion."

8. On March 3, Professor Renken sent a memorandum to Professor Boyland as chair of the FRRC, advising him that he had previously filed a complaint alleging discrimination, bullying and harassment against these same complainants with the Office of Equity/Diversity Services that had been pending unresolved since April, 2018, pointing out that the UWM Discriminatory Conduct/Consensual Relationships Policy prohibited "retaliation against individuals who engage in protected activities, including filing complaints or participating as a witness in the investigation," and stating that "during the course of this investigation, it is critically important that you avoid any conduct that could appear to be retaliatory." He asked Professor Boyland if he could share this new FRRC complaint with the Office of Equity/Diversity Services.

9. Professor Boyland responded that "I really can't advise that, " pointing out doing so "might negatively impact you and/or may be considered retaliatory against others."

10. On March 6 the complainants furnished 23 pages of additional materials supporting their complaint to Professor Boyland. Professor Renken, however, did not receive these materials until April 2.

11. On April 16 Professor Renken delivered his written response to the complaint to Professor Boyland.

12. On April 30, Professor Boyland emailed "tentative conclusions" of the FRRC to Professor Renken.

13. In his transmission memorandum Professor Boyland stated that written responses to the tentative conclusions could be filed within 10 working days and advised the parties that "if

−5−

you do not agree with the conclusions, please indicate which parts of the conclusions you disagree with in your written reply." He further stated that "<u>if there is no agreement between the parties to the FRRC conclusions, the FRRC may invoke formal fact-finding procedures</u> in conformity with P&P 5.45 (3)." (emphasis added.)

 14. The tentative conclusions of the FRRC recommended the following discipline:

  a) That for the academic year 2019-20 Professor Renken be excluded from attending faculty meetings or serving on any departmental or college committee;

  b) That he participate in counseling through the Employee Assistance Program;

  c) That the Dean of the College of Engineering and Applied Sciences contact the Ombuds Office to address problems of intra-departmental communication;

  d) That a letter of reprimand be placed in Professor Renken's personnel file; and

  e) That a future complaint for substantially similar behavior would be referred to the chancellor for consideration of dismissal.

 15. On May 14, Professor Renken emailed a written response to the conclusions to Professor Boyland, stating "I disagree with the conclusions. The attachment highlights my disagreements." He attached a printout of the tentative conclusions, highlighting in yellow those with which he disagreed.

 16. Professor Boyland responded on May 14 with an email thanking Professor Renken for his response, followed by a second email advising that "if you wish to send commentary about

-6-

the highlighted regions [*sic*], please send a separate document."

17. Professor Renken responded in emails on May 15 stating that "you did not request commentary in the April 30, 2019 memorandum," and that he had followed the instructions to communicate the parts of conclusions with which he disagreed. Professor Boyland responded that same day: "you are correct that we didn't require comment."

18. On that same day, May 15, at 11:58 AM Professor Boyland sent an email to the parties attaching each of their responses to the tentative conclusions and advising them that he would send them the final determination of the FRRC within 10 days.

19. The complainants' response attached to that May 15 email had been submitted by Professor Deyang Qu, the principal complainant. It was dated May 6 but had not been previously furnished to Professor Renken. When he opened it he discovered that it contained allegations, factual representations, and arguments that had not been included in the complaint he had been given.

20. The new allegations included the accusation that he had failed to comply with a past disciplinary order by "refusing to perform his service duties," had "made gun threats against fellow faculty members," and had "engaged in xenophobic rhetoric."

21. These incendiary allegations were false and were even contradicted by exhibits initially submitted by Dr. Qu to support the complaint.

22. Based on those newly presented materials, Dr. Qu urged the FRRC to recommend more severe discipline than it had recommended in its tentative conclusions, including:

    a)    That Professor Renken be suspended from faculty meetings and committee memberships for two academic years rather than one;

      b)    That he undergo a formal evaluation by a professional;

      c)    That his workload be adjusted from two to three courses per semester per department policy to account for his suspension from committee service activities; and

      d)    That "more serious disciplinary measures than another reprimand letter should be considered."

23. Professor Renken immediately emailed to Dr. Boyland that "Dr. Qu's May 6, 2019 reply has introduced new allegations."

24. Unbeknownst to Professor Renken, when Dr. Boyland on May 15 sent him Dr. Qu's May 6 additional allegations and his request that more severe discipline be imposed the FRRC was already in a closed meeting scheduled for that morning to decide the complaint, had considered those new accusations without Professor Renken having an opportunity to rebut them, and had already voted to recommend discipline more severe than that recommended in its own tentative conclusions.

25. The FRRC recommended that Professor Renken be suspended without pay for two full academic years.

26. On May 17, when two days had gone by without a response from Dr. Boyland to his objection to the new allegations from Dr. Qu, Professor Renken sent the following email to Dr. Boyland: "As per UWM P&P 5.45(3), I am invoking my rights to a fair hearing on this complaint." He did not at this time know that the decision had already been made and that he was to be suspended without pay for two years.

27. Dr. Boyland, knowing that the decision had already been made, denied this request

-8-

for a fair hearing, responding that the committee had "already completed its investigation and issued its findings to the Chancellor. Section 5.45 is no longer operative at this time." He further stated that the committee had also considered whether to invoke formal fact-finding procedures but had declined to do so, so that the only recourse Professor Renken would now have would be to file objections with the chancellor. That had to be done in 10 working days.

28. On that same day, May 17, Dr. Boyland submitted the FRRC's "Final Report" (which Professor Renken had not yet seen) to Chancellor Mone, advising him that "the findings and recommendations were approved by a unanimous vote of the FRRC on May 15, 2019."

29. Professor Renken received the Final Report of the FRRC when he received Dr. Boyland's email of May 17 transmitting it to the chancellor.

30. The findings and recommendations in the Final Report relied heavily on false accusations in Dr Qu's May 6 supplementation of the record, to which Dr. Renken had not been able to respond, and when he read it on May 17 he learned for the first time that he would be unemployed and without income to support his family for two years.

31. On May 20, 2019, Chancellor Mone acknowledged receipt of the Final Report by email, with a copy to Professor Renken, advising that any objections would have to be submitted to him by June 3 and that any objections would have to be based on the record developed by the FRRC.

32. Professor Renken retained counsel to represent him in presenting his objections to the Final Report. Counsel served objections on the chancellor on June 3, arguing:

    a)    That the committee's findings that Dr. Renken had violated the faculty policies and procedures of UWM were not supported by the evidence on the

      record;

    b)    That the alleged acts consisted of speech protected by the First Amendment to the United States Constitution;

    c)    That the discipline imposed was disproportionate to the gravity of the offenses, even if it had been supported by evidence;

    d)    That Professor Renken had been deprived of fair notice of the charges against him and an opportunity to respond; and

    e)    That Professor Renken had been wrongfully deprived of his right to a fair hearing,

all in violation of the UWM Faculty Rules and Procedures and his right to Due Process under the Constitution, and asked the chancellor to rule accordingly.

    33.    Finally, counsel requested the chancellor to order the formal fact-finding hearing Professor Renken had requested as soon as he learned that the record had been supplemented without notice to him.

    34. On July 8 the chancellor issued his decision, upholding the committee's final findings and denying Professor Renken's request for a hearing.

    35. Section UWS 6.01 (2) of the Wisconsin Administrative Code, governing the University of Wisconsin System, provides that "<u>such hearing shall be held</u> at the request of the chancellor or**,** <u>if the chancellor invokes a disciplinary action, at the request of the faculty member concerned.</u>" (emphasis added)

    36. In addition to denying the fair hearing the chancellor imposed the following discipline on Professor Renken:

    a)    Suspending him without pay for the fall and spring semesters of 2019-2020;

    b)    Cancelling his imminently scheduled fall sabbatical;

    c)    Barring him from being present on the University campus for the duration of the suspension;

    d)    Barring him from having any contact with UWM except through the Dean or Assistant Dean.

37.    To support his findings, the denial of a fair hearing, and the discipline he imposed the chancellor wrongfully relied on matters not in the record of the proceeding, including his personal interview of at least one of the witnesses, on purported facts the committee had explicitly excluded from the record and declined to rule on because they were beyond the committee's jurisdiction and therefore irrelevant to its conclusions, and on Professor Renken's personnel files regarding the existence and terms of his pending sabbatical leave.

38.    Professor Renken was denied due process in that

    a)    He was not given notice of the substantial amendments to the charges filed against him,

    b)    He was not given an opportunity to respond to those charges,

    c)    He was not given notice of the decision to recommend his suspension without pay until after that decision had been made,

    d)    He was deprived of an opportunity for a hearing at which he could have confronted witnesses and presented a meaningful defense,

    e)    The chancellor's decision affirming committee's recommendations was based on matters not in the record, in violation of UWM's policies

and procedures,

f)　He was knowingly and selectively subjected to an expedited and retaliatory proceeding while his related complaint against the complainants in this proceeding was allowed to languish unattended for two years despite his repeated request for action, in violation of his right to equal protection of the law, and

g) The sanctions were based upon prior conduct for which Professor Renken had already been disciplined, in violation of UWM Policies and Procedures section 5.45(6), which provides that once a committee has made a recommendation as to discipline "the faculty member involved shall not be charged again for the same misconduct."

39.　Suspension without pay for two semesters will result in Professor Renken losing approximately $90,000 in salary plus the loss of benefits the dollar value of which has yet to be determined.

40.　Cancellation of his pending sabbatical will force Professor Renken to abandon or breach the terms of scheduled research and grant fulfillment obligations for which he has made non-reimbursable expenditures and has undertaken financial commitments, causing him financial loss and damaging his professional reputation.

41.　Cancellation of his pending sabbatical and banishment from the university will also require Professor Renken to breach or defer commitments made with respect to ongoing research projects and required academic work of PhD candidates and graduate students dependant on him for continued supervision and advice, thus damaging them by delaying and

interfering with the completion of their degree requirements and commencement of their careers, and further damaging his professional reputation.

42. Suspension from his teaching assignments for the coming year will inconvenience and cause disruption to students who have selected courses based on his being the assigned professor and will further damage his professional reputation.

43. Professor Renken has a valuable property right in the uninterrupted continuation of his salaried position as a tenured associate professor and must be afforded due process and equal protection of the law under the Wisconsin and federal Constitutions before that right can be taken away.

44. The suspension of employment and class assignments, the loss of pay, and being prohibited from presence on campus and contact with the university and his students for two semesters will do substantial and irreparable harm to Professor Renken's professional reputation and will seriously jeopardize his career as scholar and educator, thereby infringing upon his liberty interests protected by the due process clause of the federal Constitution.

45. The chancellor's decision is void and must be dismissed because it violated Professor Renken's right to due process and equal protection of the law.

46. In the alternative, due process requires that Professor Renken be granted a full hearing on the complaint against him before a fair and impartial tribunal.

47. The FRRC and its chair, Professor Boyland, must be disqualified from serving as the fair and impartial adjudicator of the complaint to which Professor Renken is entitled, because they evidenced bias, partiality and prejudgment:

a) by failing to consider the evidence submitted by Professor Renken that the

complaint was commenced in retaliation against a prior still unresolved complaint filed against the complainants by Professor Renken,

b) by advising him not to pursue that argument lest he be accused of retaliation,

c) by failing to advise him of the May 6 supplementation of the record by the complainants until day the Final Report was issued,

d) by denying his demand for a fair hearing, and

e) by failing to exercise its own power to institute a formal investigation and hearing process, knowing that he had not had notice of the new charges against him and a opportunity to respond.

48. The actions of the defendants in suspending Professor Renken's employment without pay, barring him from being physically present on the UWM campus, cancelling his sabbatical, basing that decision on matters not within the record, not giving him notice of the charges and an opportunity to respond, denying his request for a hearing, and deferring action on his prior pending complaint were taken under color of state law and deprived him of rights, privileges and immunities secured by 14th Amendment to the United States Constitution. He is therefore entitled to equitable relief from the acts of the defendants under 42 U.S.C. §1983.

49. Classes for the 2019-2020 fall term begin on September 3 and the faculty contract year begins on August 19. If the defendants are not restrained from implementing their action before then, the injury to Professor Renken will become irreparable.

50. Professor Renken has no adequate remedy at law.

WHEREFORE, plaintiff prays judgment as follows:

1) That a temporary injunction be issued restraining the defendants from suspending

plaintiff without pay, cancelling his 2019 sabbatical, depriving him of the benefits incidental to his appointment as an associate professor, and barring his physical presence on the UWM campus and contact with the University until such time as the court has issued a ruling determining plaintiff's rights in this action and all rights of appeal available to either party have been completed or expired;

2)   That the decision of the chancellor be declared void and vacated as having violated plaintiff's rights to due process and equal protection of the law;

3)   In the alternative, that the defendants be mandated and enjoined to grant plaintiff a full hearing before a fair and impartial tribunal;

4)   That the plaintiff be awarded such damages and punitive damages as may be established at trial;

5)   That plaintiff be awarded his reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

6)   That plaintiff be awarded costs and disbursements and such other relief as the court may deem equitable and proper.

   Dated this 30th day of July, 2019.

Electronically signed by Ralph J. Ehlinger
Ralph J. Ehlinger
State Bar No. 1010432
EHLINGER LAW OFFICE, LLC
W175 N11117 Stonewood Drive #212
Germantown, WI 53022-6506
Telephone: (262) 255-5060
Facsimile: (262) 255-5553
ralph@ehlingeradvocates.com
Attorney for Plaintiff

**JURY DEMAND**

**THE PLAINTIFF DEMANDS A TRIAL BY A JURY OF TWELVE PERSONS**