# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KEVIN J. RENKEN,<br><br>       Plaintiff,<br><br>v.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN SYSTEM, UNIVERSITY OF WISCONSIN-MILWAUKEE, MARK MONE, and JOHN BOYLAND,<br><br>       Defendants. | Case No. 19-CV-1122-JPS<br><br>**ORDER** |

## 1. INTRODUCTION

Plaintiff filed this action on July 30, 2019 in Milwaukee County Circuit Court. (Docket #1-2 at 3–16). Plaintiff, a professor at the University of Wisconsin-Milwaukee ("UWM"), sues Defendants, the Board of Regents of the University of Wisconsin System (the "Board"), UWM itself, Mark Mone ("Mone"),the Chancellor of UWM, and John Boyland ("Boyland"), the chair of the UWM Faculty Rights and Responsibilities Committee ("FRRC"), for violating his right to due process in suspending him from his teaching position. *Id.* Defendants removed the case to this Court on August 5, 2019. (Docket #1). Along with the removal, the Clerk of the Court docketed a motion for a preliminary injunction that Plaintiff had filed in state court on August 2, 2019. (Docket #3). Three days after removal, Plaintiff filed an additional motion seeking a temporary restraining order. (Docket #11). Defendants then filed a motion to dismiss this action on August 23, 2019. (Docket #18). All of the motions are fully

briefed, and for the reasons explained below, Plaintiff's motions will be denied, Defendants' will be granted in part, and this action will be dismissed.

## 2. MOTION TO DISMISS

### 2.1 Standard of Review

Defendants have moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). That Rule provides for dismissal of complaints which fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). In reviewing Plaintiff's complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in [his] favor[.]" *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016) (citation omitted). To state a viable claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak*, 810 F.3d at 480 (quotation omitted).

### 2.2 Relevant Facts

Accepting the truth of Plaintiff's well-pleaded allegations and drawing all reasonable inferences in his favor, the relevant facts are as follows. Plaintiff is a tenured professor of mechanical engineering at UWM and has worked there since 1987. On February 21, 2019, a group of professors from Plaintiff's department filed a complaint against him with the UWM University Committee, alleging that he engaged in disruptive,

abusive, and bullying behaviors. That committee forwarded the complaint to the FRRC.

On March 3, Plaintiff sent a memorandum to Boyland, advising that Plaintiff had filed a charge of discrimination and harassment against the same group of professors who filed the complaint against him. Plaintiff's charge had not yet been resolved. Plaintiff questioned whether he was being retaliated against during the pendency of his own complaint, which is prohibited by UWM policy. Plaintiff asked Boyland to share this information with the FRRC, but Boyland responded that he could not, as doing so might make it appear that *Plaintiff* was retaliating against the other complainants.

Plaintiff submitted a written response to the complaint on April 16. At the end of April, Boyland sent the FRRC's "tentative" conclusions to Plaintiff. The conclusions were that discipline was appropriate, and that the discipline should include barring Plaintiff from faculty meetings, forcing him to undergo counseling, and placing a letter of reprimand in his personnel file. Plaintiff was told that he could respond by lodging any disagreement he had with the tentative conclusions. He was further informed that if the parties had a dispute about the facts, the FRRC may institute factfinding procedures. On May 14, Plaintiff sent a cursory response noting his disagreement with several of the conclusions. Boyland responded that day, telling Plaintiff that if he had more detailed comments about his disagreements, he should send them along.

The next day, Boyland e-mailed both parties. He attached each side's response to the tentative conclusions and stated that the FRRC would issue a final decision within ten days. This was the first Plaintiff saw of the other party's response. That response was sent by a fellow

professor, Deyang Qu ("Qu"). Qu's response contained new allegations, including that Plaintiff had made threats of violence against other faculty members and had used xenophobic rhetoric. Plaintiff denies those allegations. Qu asked that the FRRC consider more serious disciplinary measures than those proposed in the tentative conclusions.

Plaintiff immediately responded to Boyland, noting that Qu had raised new allegations. Unbeknownst to Plaintiff, the FRRC was already meeting in closed session to decide the complaint. Its decision was to recommend that Plaintiff be suspended without pay for two academic years. On May 17, having heard nothing from Boyland, Plaintiff invoked UWM policy in asking for a "fair hearing" on the complaint. Boyland, knowing that the decision had already been made, denied the request, stating that the investigation was complete. Boyland informed Plaintiff that the FRRC would engage in no further factfinding, and that his only recourse was to file an objection to the recommendation with the chancellor, Mone, within ten days.

Along with this response, Boyland sent Plaintiff the FRRC's final report. Plaintiff contends that the FRRC relied on Qu's false allegations in rendering its recommendation. On May 20, Mone acknowledged receipt of the final report and advised that objections were due by June 3. Plaintiff then retained counsel to represent him. Plaintiff's counsel served his objections on June 3. Plaintiff claimed that the committee's findings were not supported by the factual record, that he had not been given fair notice of the charges against him or a fair hearing, that his statements underlying the complaint were protected speech, and that the discipline imposed was disproportionate to the alleged offense. Plaintiff stated that the FRRC's handling of the complaint violated UWM policy and his right to due

process. Plaintiff asked Mone to reject the FRRC recommendation and hold a formal factfinding hearing before issuing a decision.

On July 8, Mone issued a decision adopting the FRRC's findings and denying Plaintiff's request for a hearing. Mone also imposed the following discipline: suspension without pay for the 2019-20 academic year, cancelling Plaintiff's upcoming sabbatical, barring Plaintiff from coming to campus during the suspension, and barring Plaintiff from contacting UWM except through the dean. Plaintiff alleges that Mone's decision was based not only on the incorrect findings of the FRRC, but also Mone's own off-the-record investigation, which included a personal interview with a witness and a review of Plaintiff's personnel file and the terms of his pending sabbatical.

Plaintiff claims that he was denied due process, as provided in the U.S. and Wisconsin Constitutions, in the following ways:

    a)    He was not given notice of the substantial amendments to the charges filed against him;

    b)    He was not given an opportunity to respond to those charges;

    c)    He was not given notice of the decision to recommend his suspension without pay until after that decision had been made;

    d)    He was deprived of an opportunity for a hearing at which he could have confronted witnesses and presented a meaningful defense;

    e)    The chancellor's decision affirming [the FRRC's] recommendations was based on matters not in the record, in violation of UWM's policies and procedures;

    f)    He was knowingly and selectively subjected to an expedited and retaliatory proceeding while his related complaint

> against the complainants in this proceeding was allowed to languish unattended for two years despite his repeated request for action, in violation of his right to equal protection of the law; and
>
> g) The sanctions were based upon prior conduct for which [he] had already been disciplined, in violation of UWM Policies and Procedures section 5.45(6), which provides that once a committee has made a recommendation as to discipline "the faculty member involved shall not be charged again for the same misconduct."

(Docket #1-2 at 11–12). Plaintiff complains that Defendants' conduct has damaged his reputation and cost him money in the form of his lost salary and benefits, as well as nonrefundable expenses related to his sabbatical. Plaintiff also suggests that Defendants' conduct has harmed his "liberty" interest in his reputation and career.

As his first item of relief, Plaintiff seeks a temporary injunction cancelling all of the discipline imposed by Mone. Plaintiff then seeks to have Mone's decision declared void as violating his due process rights. Alternatively, Plaintiff would accept an order requiring Defendants to give him a "full hearing before a fair and impartial tribunal" on the complaint against him. *Id.* at 15. Finally, Plaintiff seeks compensatory and punitive damages, attorneys' fees, and costs.

### 2.3   Analysis

Plaintiff's complaint does not identify his claims in separate counts. Thus, Defendants and the Court were initially left to piece his allegations together to discern what claims he raised. With the benefit of Plaintiff's response brief, the Court can now accurately describe Plaintiff's causes of action. First, he brings a claim under 42 U.S.C. § 1983 for violation of his due process rights under the Fourteenth Amendment of the U.S.

Constitution. (Docket #27 at 3). Second, Plaintiff presents an identical due process claim under the Wisconsin constitution. *Id.* Finally, Plaintiff asserts a host of state-law claims for violation of certain provisions of the Wisconsin Administrative Code. *Id.* Despite his allegations expressly seeking damages, Plaintiff avers in his response brief that he desires only injunctive and declaratory relief. *Id.*[1]

The Court will begin, and end, with an assessment of the Fourteenth Amendment claim. To state a federal procedural due process claim, a plaintiff must allege two elements. First, he must state that he was deprived of a protected liberty or property interest. *Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 804 (7th Cir. 2010). Defendants concede that tenured professors such as Plaintiff have a property interest in their continued employment and that this interest was at least temporarily harmed by their conduct, although not taken away permanently. (Docket #19 at 7).

Second, a plaintiff must demonstrate that there were "insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). To determine whether a given set of procedures afford adequate process, courts distinguish between claims based on established state procedures versus those stemming from the random or unauthorized conduct of state employees.

---

[1] Plaintiff is certain that his complaint is "clear" that he does not want damages. This is false. (Docket #1-2 at 15) (Plaintiff prays that he be "awarded such damages and punitive damages as may be established at trial"). In yet another episode of sloppy drafting, Plaintiff states in his brief that he did not intend to present an equal protection claim, despite the complaint's repeated references to that doctrine. (Docket #27 at 8 n.3). Plaintiff characterizes those allegations as "inadvertent." *Id.* The Court admonishes him to give closer attention to drafting his pleadings; the allegations of a complaint are important and must never be trifled with.

*Leavell*, 600 F.3d at 804. For the first species of claim, pre-deprivation procedures are required, because the state can accurately predict when a wrongful deprivation will occur and can take corrective action beforehand. *Id.* at 805. By contrast, the second species of claim demands only post-deprivation procedures, as the state cannot anticipate that its employees will act outside the bounds of the rules it had established. *Michalowicz*, 528 F.3d at 535.

Defendants suggest that Plaintiff proceeds under the second species of claim. (Docket #28 at 3–4). Plaintiff, for his part, makes no attempt to clarify the matter. *See generally* (Docket #27). The Court will, therefore, assess the claim as one challenging random or unauthorized conduct. If there was a persuasive argument that this view is incorrect, Plaintiff has not presented it, and the Court will not do so for him. *Doherty v. City of Chi.*, 75 F.3d 318, 324 (7th Cir. 1996) ("Given our adversary system of litigation, [i]t is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (quotation omitted). Moreover, taking Plaintiff's allegations as true, it appears that this is his intended theory; the thrust of Plaintiff's complaint is that Boyland and Mone consistently skirted the law and UWM's policies in order to exact improper punishment upon him. *See Leavell*, 600 F.3d at 805–06 (failure to follow procedures in conducting a pre-deprivation hearing amounted to random, unauthorized conduct).

With the nature of Plaintiff's claim settled, the Court next considers whether the post-deprivation procedures available to Plaintiff were so inadequate or unfair as to fall below the constitutional minimum. *Id.* at 806. Two such procedures existed. The first was an appeal to the Board itself. The second was the filing of an action in state court pursuant to Wis.

Stat. § 227.52, which provides for review of administrative decisions by state agencies. The state court is empowered to take additional evidence, remand to the agency for further proceedings if appropriate, and ultimately to set aside or reverse the agency's decision if it suffers from legal or procedural errors. *Id.* § 227.57. The state court is also authorized to "provide whatever relief is appropriate irrespective of the original form of the petition," including issuing "such interlocutory order[s] as it finds necessary to preserve the interests of any party and the public pending further proceedings or agency action." *Id.* § 227.57(9).

Plaintiff maintains that both of these procedures were inadequate, because his "principal objective was to obtain an injunction[.]" (Docket #27 at 9). Plaintiff believes that "the question is whether either of those [procedures] was in fact adequate to that purpose." *Id.* He is mistaken. His claim is that Defendants failed to accord him adequate process before disciplining him. The question the Court must answer, therefore, is whether the post-deprivation procedures outlined above are adequate to provide the process he claims was missing. What remedy Plaintiff desires after he proves his due process claim—an injunction, a declaration, damages, or anything else—is immaterial to whether the available process comported with his due-process rights. In other words, "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Doherty*, 75, F.3d at 323. Whether the post-deprivation procedures afforded Plaintiff this opportunity is entirely separate from what relief Plaintiff should receive if he proves that they did not.

Plaintiff argues that neither procedure was adequate because neither could get him the injunction he wanted in a timely manner. With

the foregoing analysis, it is clear that this contention is irrelevant. Plaintiff's only remaining attack on the adequacy of the procedures is directed at the Board appeal option. He maintains that this option is suspect because he could not appeal as of right, but only with leave, and even if leave were granted, he could not develop the record as he wanted to. Plaintiff offers no other reason to question the Section 227 procedure beyond the purported unavailability of a timely injunction.[2]

The Court is left, then, without an allegation in the complaint or a valid argument in Plaintiff's brief that the Section 227 procedure failed to satisfy due process. Plaintiff implicitly concedes that he made no attempt to follow the statutory procedure. (Docket #27 at 10) (stating that Plaintiff "opted for the one remedy that had a chance of preventing the suspension from becoming effective," namely filing this action). Because adequate state remedies were available, the federal Due Process Clause was satisfied. *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982) ("[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them.").

The parties have not discussed whether Plaintiff's federal due-process claim should be dismissed with or without prejudice. The decisions they cite, however, reveal that the dismissal must be with prejudice. As *Leavell* explains, the question is not whether a due-process plaintiff has exhausted available state remedies, *i.e.*, a condition precedent to bringing suit, but rather whether such remedies existed at all. *Leavell*, 600 F.3d at 806–07. If they do exist, and are not alleged to be inadequate,

---

[2] In light of the portion of Section 227.57(9) quoted above, the Court wonders whether Plaintiff's position is correct.

the plaintiff has failed to plead a substantive and necessary element of the claim. *Id.* at 807–08. The Court has therefore adjudicated Plaintiff's claim on its merits, warranting dismissal with prejudice. *Id.* at 808; *see also Veterans Legal Defense Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003) ("While a plaintiff is not required to exhaust state remedies to bring a § 1983 claim, this does not change the fact that no due process violation has occurred when adequate state remedies exist. . . . [W]e do not require a plaintiff to pursue those remedies in order to challenge their adequacy, but likewise we do not allow a plaintiff to claim that she was denied due process just because she chose not to pursue remedies that were adequate. Given the availability of state remedies that have not been shown to be inadequate, plaintiffs have no procedural due process claim.").

Plaintiff's Fourteenth Amendment claim was the only cause of action over which this Court had original jurisdiction and it was Defendant's sole basis for removal. (Docket #1 at 2). Now that the claim stands dismissed, the Court will dismiss the remaining state law claims without prejudice to their being re-filed in state court. *See* 28 U.S.C. § 1367(c)(3); *RWJ Mgmt. Co., Inc. v. BP Prods. N.A., Inc.*, 672 F.3d 476, 479–80 (7th Cir. 2012) (when all federal claims are dismissed, there is a presumption that the court will relinquish jurisdiction over supplemental state law claims). Thus, the entire action will be dismissed as well.

3. **MOTIONS FOR INJUNCTIVE RELIEF**

In light of the dismissal of this action, Plaintiff's motions for injunctive relief (Docket #3 and #11) will be denied as moot.

4. **CONCLUSION**

In light of the foregoing, Defendants' motion to dismiss must be granted in part and this action dismissed. Generally, after granting a

motion to dismiss, courts should allow a plaintiff leave to amend his complaint to correct its deficiencies prior to dismissing an entire action. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & N.W. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). Leave need not be given, however, if the defects are clearly uncorrectable, and thus amendment would be futile. *Id.* at 520. It appears that any amendment would be futile here because Plaintiff has all but conceded that absent his timing concerns, the Section 227 procedure would be sufficient to satisfy due process. *See* (Docket #27 at 9–10). More importantly, the Court will not grant leave to amend to a represented party absent a request for leave, which Plaintiff has not made. *See generally id.*; *Chaidez v. Ford Motor Co.*, No. 18-2753, 2019 WL 4050996, at *6–7 (7th Cir. Aug. 28, 2019). This action will, therefore, be dismissed without granting leave to amend the complaint.

Accordingly,

**IT IS ORDERED** that Plaintiff's motions for injunctive relief (Docket #3 and #11) be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss (Docket #18) be and the same is hereby **GRANTED in part**;

**IT IS FURTHER ORDERED** that Plaintiff's Fourteenth Amendment Due Process claim be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the state law claims raised in Plaintiff's complaint and Plaintiff's state law claims be and the same are hereby **DISMISSED without prejudice**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED.**

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of October, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge